1

2

3

4

5

6                   UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF CALIFORNIA

8

9   BETH MAXWELL STRATTON, CHAPTER 7 )      1:02-cv-6213 OWW DLB
    BANKRUPTCY TRUSTEE FOR THE SGP   )
10  BENEFIT PLAN, INC.,              )      FINDINGS OF FACT AND
                                     )      CONCLUSIONS OF LAW
11              Plaintiff,           )
                                     )
12       v.                          )
                                     )
13  GLACIER INSURANCE                )
    ADMINISTRATORS, INC.; GLACIER    )
14  INSURANCE ENTERPRISES, INC., et  )
    al.,                             )
15                                   )
                Defendants.          )
16                                   )
                                     )
17  _____)

18

19       This matter came before the undersigned for hearing on

20  September 18, 2006, and continued hearing on November 22, 2006,

21  pursuant to a motion brought by plaintiff Beth Maxwell Stratton

22  ("Stratton") as Chapter 7 Bankruptcy Trustee of the SGP Benefit

23  Plan, Inc. ("SGP"), and as court appointed fiduciary for the SGP

24  Benefit Plan ("Plan") and the SGP Benefit Plan Trust ("Trust").

25  Stratton's motion sought approval of settlements entered into

26  between Stratton and others, sought approval of Stratton's final

27  report of administration and proposed plan for distribution of

28  the assets of SGP, the Plan and the Trust, requested issuance of

                                   1

1  a permanent injunction protecting the settling parties from other

2  claims and litigation, and asked the Court to retain jurisdiction

3  to implement and enforce the proposed settlements.

4      Stratton was present and represented at the hearing by

5  counsel Michael J. Seng.  The named "Glacier Defendants" (Glacier

6  Insurance Administrators, Inc.; Glacier Insurance Enterprises,

7  Inc.; Fresno Agent Service Team, Inc. doing Business as Ben Mar

8  Insurance Services; Ben Mar Insurance Services; Lawrence

9  Thompson) were represented at the hearing by attorney William C.

10 Hahesy.  Defendants Brad Stark, Pierre Tada, Norma Spalding, Dick

11 Neece, Sr., and William Wolhaupter ("Former Trustee Defendants")

12 were represented at the hearing by attorney Donald Patrick

13 Sullivan.  Non-parties, Sunkist Growers, Inc., a California

14 membership cooperative and its former employee Ted Jones

15 ("Sunkist") were represented at the hearing by attorney Michael

16 H. Bierman.  The United States Department of Labor, though not a

17 party to the action, appeared by attorney Robert Milgrim, its

18 counsel from the Office of the Solicitor.  All of the foregoing

19 appeared in support of the relief sought by Stratton.

20     Also present were attorney Thomas J. Polis on behalf of

21 claimant Davita, Inc., and attorney Dennis M. Lynch for claimant

22 Kaweah Delta Healthcare District.  Each objected to the

23 administration of his client's particular claims, but not to the

24 substantive relief Stratton sought.  Those objections have since

25 been resolved.  The objections filed by Tenet Health systems

26 Hospital was denied at the September 18, 2006, hearing.

27     Notice of Stratton's motion for said relief was approved by

28 this Court in an Order dated May 3, 2006, and served by mail on:

2

1  all parties to the action; Sunkist; all who filed claims in the
2  SGP bankruptcy; all who identified themselves as claimants in
3  response to Stratton's Notice and solicitation of Proofs of Claim
4  (sent per this Court's January 4, 2005, Order); and, all other
5  identifiable individuals and entities who participated in or who
6  had a claim processed by the Plan at any time during the period
7  January 1, 2000, through December 31, 2001.  Approximately 30,000
8  notices were served more than sixty days before the September 18,
9  2006, hearing.  Stratton's July 14 and 17, 2006 Proofs of Service
10  regarding the Notice of hearing list all to whom notices were
11  sent.

12      The September 18, 2006, hearing on Stratton's motion was
13  continued to November22, 2006, to enable Stratton to address and
14  try to resolve Davita, Inc., and Kaweah Delta Hospital District
15  objections to Stratton's administration of their respective
16  claims and to give Stratton an opportunity to attempt to re-mail
17  returned Notices and report to the parties on her efforts to do
18  so.  (See Stratton's Declaration of Due Diligence in Serving
19  Notice of Hearing and her November 15, 2006,  Declaration of
20  Service of Notice of Continued Hearing.)

21                      **FINDINGS OF FACT**

22      Based upon all points and authorities filed in connection
23  with this motion, the argument of counsel at the hearings hereof,
24  and the pleadings and papers on file, including orders previously
25  issued by the Court, the Court makes the following findings of
26  fact:

27      1.   SGP was created in August 1990 as a California
28  non-profit mutual benefit corporation for the purpose of

1 administering a voluntary employees' benefit association, i.e., a
2 multiple employer welfare benefit plan (the Plan) under ERISA
3 section 3(40), 29 U.S.C. section 1002(1)(A).

4     2.    The Plan suffered substantial losses in 1999 and 2000.
5 In or about July 2001, the Plan stopped accepting new insureds.
6 In October 2001, the Plan ceased operation and, having no
7 measurable funds, paid no more claims.

8     3.    On or about February 25, 2002, SGP filed a petition in
9 the United States Bankruptcy Court of this district (case No.
10 0211653-A-7) for protection under Chapter 7 of the United States
11 Bankruptcy Code (the "Bankruptcy Proceeding").  Stratton became
12 the duly qualified, appointed and acting Chapter 7 Bankruptcy
13 Trustee of SGP.

14     4.    On October 1, 2002, Stratton initiated this action to
15 recover SGP's, the Plan's and the Trust's losses from Sunkist,
16 Glacier, and the Former Trustee Defendants alleging, inter alia,
17 that the various defendants had breached contractual and/or other
18 duties owed to SGP, the Plan, and the Trust.

19     5.    The reference to the bankruptcy court subsequently was
20 withdrawn, and the Bankruptcy Proceeding was consolidated in this
21 action.  On or about May 29, 2003, this Court appointed Stratton
22 as Independent Fiduciary of the Plan and Trust.

23     6.    Thereafter, based in large part upon the United States
24 Department of Labor's investigation into the management,
25 operation, finances, and bankruptcy of the Plan and Stratton's
26 own investigation and discovery into, among other things, the
27 likelihood of satisfying judgments, Stratton undertook
28 arms-length settlement negotiations with the various defendants

1  and Sunkist. Those negotiations produced agreements from the

2  settling parties to pay the amounts indicated below subject to

3  various conditions spelled out in the written Settlement

4  Agreements (on file with Stratton's Motion for Final Approval of

5  Settlements); all were expressly made subject to this Court's

6  approving them and entering judgment to the effect that the

7  settlements barred all future claims against the settling

8  parties:

9           a.    Sunkist agreed to pay a sum now set at $2,027,376;

10          b.    The Trustee Defendants agreed to pay the sum of $1

11  million plus such interest as accumulates on that sum after its

12  January 11, 2005, deposit with the Registry of this Court;

13          c.    The Glacier Defendants agreed to pay the sum of $2

14  million plus such interest as accumulates on that sum after its

15  January 6, 2005, deposit with the Registry of this Court.

16      7.    There have been no objections to the proposed

17  settlements or to the other substantive relief Stratton seeks.

18  (Objections that were filed sought only an increase in the

19  particular amount allowed on a few specific claims.)  The

20  settlements were reached as a result of arms-length negotiation

21  by competent counsel after sufficient investigation and discovery

22  to enable Stratton to properly evaluate the claims and defenses.

23  The contributions from each of the three groups of defendants are

24  fair, adequate, and reasonable.  Considering the risks, costs,

25  complexity and substantial delay inherent in litigating

26  Stratton's claims and collecting judgments if any are obtained,

27  the settlements appear to provide a better result and larger

28  recovery for all claimants and creditors of SGP, the Plan and

1  Trust than any realistically available alternative.
2  Specifically:

3          a.    The  $2,027,376 to be paid by Sunkist is
4  reasonable, fair and adequate in light of Sunkist's position that
5  its liability exposure is limited to the $1 million it pledged to
6  enable the Plan to meet California excess reserve requirements
7  and the $285,581 it received as licensing fees from the Plan. No
8  evidence of active malfeasance by Sunkist has been identified.
9  It appears Sunkist's role in the operation of the Plan was more
10  tangential than that of the other defendants.  The sum to be paid
11  by Sunkist is proportional to, and reasonably related to, the
12  sums paid by the other settling parties, to the total loss
13  suffered by the Plan and to the likely relative exposure of
14  Sunkist.

15          b.    Stratton's investigation and discovery have failed
16  to give cause to believe that a significant judgment obtained
17  against any of the Former Trustee Defendants would be satisfied
18  by any of them.  While SGP, Inc., had an Executive Protection
19  Policy and a Not-For-Profit Organizational Liability Policy, each
20  potentially providing up to $1 million liability coverage for
21  covered acts by trustees, the carrier maintains that the policies
22  do not cover any of Stratton's claims herein.  Moreover, both
23  policies are self-exhausting, i.e., every dollar spent on defense
24  costs reduces the amount available for indemnity, and the parties
25  anticipate it could cost in excess of $2 million to litigate
26  Stratton's claims.  In order to compromise and avoid further
27  litigation, the carrier has agreed to pay the full amount of the
28  Executive Protection Policy coverage and Stratton, after

6

1   considering applicable facts and law and consulting with
2   independent insurance counsel, has concluded that that offer is
3   fair and reasonable.  Given the risks, costs and delay in
4   litigation and the fact that payment of the $1 million insurance
5   coverage would be the equivalent of $200,000 from each of the
6   five Former Trustee Defendants, more than Stratton at present has
7   reason to believe she could collect from each of them
8   individually, this settlement is found to be fair, reasonable,
9   and adequate and in the best interests of the Plan.  It bears a
10  reasonable relationship to the Former Trustee Defendants'
11  relative likely exposure, to the sums paid by the other settling
12  parties, and the total loss suffered by the Plan.

13          c.   Stratton's investigation has similarly failed to
14  identify potential assets from which a judgment could be
15  satisfied against the Glacier Defendants except for a $5 million
16  Errors and Omissions liability insurance policy.  The carrier
17  providing this insurance asserts Stratton's claims are excluded
18  from coverage on multiple grounds.  The Glacier Defendants had to
19  initiate litigation against the carrier to compel it to provide
20  even a defense to the Glacier Defendants.  This policy also is a
21  self-exhausting one, and Stratton believes the Glacier
22  Defendants' defense costs could reduce the policy benefits by $2
23  million or more while adding to the Plan's cost of litigating
24  against the Glacier Defendants (and then against the carrier), so
25  that the net recovery to the Plan from even successful litigation
26  could be less than the $2 million the carrier has offered to pay
27  in settlement.  In light of those circumstances, this settlement
28  too is found to bear a reasonable relationship to Glacier's

1  likely exposure and to the sums paid by the other settling

2  parties and the total loss suffered by the Plan, and to be fair,

3  reasonable, adequate, and in the best interests of the Plan.

4      8.    Considering the substantial delay, risks and costs of

5  litigation generally and particularly in matters of such

6  magnitude and complexity as are presented in this litigation and

7  considering the risks of non-recovery even if a judgment were

8  obtained given the self-exhausting nature of defendants'

9  insurance policies and lack of identifiable assets sufficient to

10  satisfy judgments, the settlements with Sunkist, the Glacier

11  defendants and the former trustees (as identified hereinabove),

12  and each of them, are found to be fair, reasonable, and adequate,

13  reasonably proportional to the settling parties' relative

14  exposures and in the best interests of SGP Benefit Plan, Inc.,

15  the SGP Benefit Plan and the SGP Benefit Plan Trust and the

16  beneficiaries, creditors and claimants thereof.  Each of the said

17  settlements are approved on the terms set out herein and in the

18  settlement agreements between Stratton and the settling parties

19  (attached as Exhibits to Stratton's Motion for Final Court

20  Approval).

21      9.    On August 14, 2004, this Court gave its preliminary

22  approval to the three settlements and, as noted above, approved a

23  form of Notice to be used by Stratton to notify all potential

24  claimants of this action, the proposed settlements, and their

25  right to object to the relief Stratton sought.  As noted, that

26  notice, advising of the requirement that all claimants submit a

27  formal Proof of Claim in the form approved by the Court, was

28  mailed and as appropriate re-mailed to some 30,000 potential

**8**

1  claimants as described above.

2      10.  Thereafter with the assistance of a licensed,
3  experienced and qualified third-party claims administrator for
4  self-insured health benefit plans, Stratton administered all
5  claims submitted in response to the Notice and determined the
6  amounts owing from the Plan on valid, timely, and unpaid claims
7  for medical care benefits.

8      11.  The Court finds the following fees and expenses of
9  administration to be fair and reasonable, consistent with the
10 terms of applicable Plan documents and/or this Court's orders,
11 and incurred in the best interests of SGP, the Plan and the
12 Trust, and Stratton is authorized to pay them:

13      a.  To Stratton, as Bankruptcy Trustee, the sum of
14 $29,502.75, and as Independent Fiduciary, the sum of $37,752.50
15 based upon time spent by her through April 18, 2006, in those
16 capacities at the rate of $175 per hour, a rate well within the
17 realm of reasonable compensation for work of this kind in that
18 specialized field in the Central Valley of California.  Stratton
19 also is entitled to compensation for her employees of $3,650.00
20 and reimbursement of expenses of $6,542.88.  Both costs were
21 reasonably incurred by her on behalf of SGP, the Plan and the
22 Trust.  Stratton is authorized to submit further fee applications
23 for time spent and costs incurred after April 18, 2006.

24      b.  To the Trucker Huss law firm, a recognized San
25 Francisco authority in the ERISA field retained by the
26 Trustee/Independent Fiduciary to advise her on ERISA law and
27 legal issues unique thereto, the sum of $48,746.26, billed at
28 rates well within the realm of reasonable compensation for such

1  expert services.

2         c.  To Seng & Stratton, the sum of $837,051.40 for
3  legal services rendered to the Trustee and Independent Fiduciary
4  through March 31, 2006, in investigating, researching, asserting,
5  and pursuing the Plan's claims, negotiating and finalizing
6  settlements, and effectuating the procedures provided for in the
7  various settlement agreements.  Such fees, in an amount less than
8  twenty percent (20%) of the total recovery (a standard
9  contingency contract in such a matter would likely be between
10 33-1/3 and 45 percent; 25% is considered the benchmark ((*Six
11 Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904
12 F.2d 1301, 1311))), are fair and reasonable given the extremely
13 complex nature of this litigation, the risks involved and the
14 results obtained.  (Seng & Stratton is authorized to submit
15 further fee applications for hourly fees and costs incurred after
16 March 2006.)

17        d.  To Janzen, Tamberi & Wong, accountants, the sum of
18 $12,600.00.  Janzen, Tamberi & Wong may submit further fee
19 applications for fees and costs incurred after April 2006.

20        e.  To McCormick, Barstow, Sheppard, Wayte & Carruth,
21 the sum of $945.00 for attorney services rendered.

22        f.  To Law Office of Alyson Berg, the sum of $1,065.00
23 for attorney services rendered.

24        g.  The fees previously paid to Healthcomp Third Party
25 Administrators, Inc., in the sum of $222,623.52 are approved.
26 Stratton is authorized to pay to Healthcomp such additional fees
27 as are reasonably necessary to complete administration of Plan
28 claims.

10

1          h.    The remaining administrative expenses, both
2    incurred and future-estimated, described in Stratton's Proposed
3    Distribution and her Motion for Final Approval of Settlements,
4    also are approved.

5         12.    Stratton's Final Report of Administration of Bankruptcy
6    Trustee, set forth in her Motion for Final Court Approval of
7    Settlements, is approved.

8         13.    After payment of the above-approved fees and costs, and
9    after setting aside funds to cover not-yet-approved and
10   future-estimated fees and costs, the balance of the funds
11   produced through settlements shall be distributed pro rata to the
12   claimants on the allowed amounts contained in Stratton's Notices
13   to claimants as adjusted due to ongoing claims administration
14   activities.   The proposed distribution is fair, reasonable and
15   consistent with the terms of applicable Plan documents and this
16   Court's orders and is approved.

17        14.    If after payment of all fees, costs and expenses, a
18   balance of at least $20,000 remains on hand, the remaining funds
19   shall be distributed pro rata to each claimant; if there is less
20   than $20,000 remaining after paying all approved costs and
21   expenses, a further distribution would not be cost-effective, and
22   so the excess will be deposited into the State of California
23   Unclaimed Property Fund for disbursement in accordance with
24   California Code of Civil Procedure section 1300, *et seq.*

25        15.    As noted, the settlements are expressly conditioned
26   upon this Court entering an order protecting the settling

27

28

1  parties, and each of them,[1] from, and barring and enjoining, all
2  further claims of any kind against them related to SGP, the Plan,
3  or the Trust.  Such an order is reasonable and appropriate under
4  the circumstances of this case; without it, the settling parties
5  would not enter into these or any other settlement because they
6  would be left exposed to future duplicate claims.

7        16.  The requested relief, including the permanent bar and
8  injunctive relief, is necessary and appropriate to aid this Court
9  in the exercise of its jurisdiction over the parties, Sunkist,
10 the persons, entities and others who filed claims in the SGP
11 bankruptcy, who filed Proofs of Claims with Stratton, and all who
12 are identified in Strattons July 14, July 17, and November 15,
13 2006, proofs of service of notice of the September 18, 2006, and
14 November 22, 2006, hearings herein.  A true and correct copy of
15 the list of the foregoing mailings is attached hereto as Exhibit
16 "A" and by this reference incorporated herein.

17       17.  The requested relief, including the permanent bar and
18 injunctive relief, is necessary to prevent frustration of the
19 settlement agreements entered into in this action and/or

20

21       [1] In the case of the Glacier Defendants, the parties to be
22 protected by this Order specifically include Glacier Insurance
   Administrators, Inc., Glacier Insurance Enterprises, Inc., in its
23 own name and doing business as Glacier Insurance Administrators,
   Fresno Agent Service Team, Inc., in its own name and doing
24 business as Ben Mar Insurance Services, and Lawrence Thompson,
25 and the officers, directors, shareholders, agents, employees,
   independent contractors, attorneys, accountants, advisors,
26 consultants, insurers, and others acting for, under or in concert
27 with them in connection with SGP, the Plan or the Trust and the
   heirs, executors, affiliates, subsidiaries, successors,
28 predecessors, assigns, transferees and insurers of them.

1  frustration of orders and the judgment to be entered by this
2  Court.

3  CONCLUSIONS OF LAW

4      1.   The Court has jurisdiction over this matter under
5  sections 502(e)(1) and (f) of the Employee Retirement Income
6  Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §
7  1132(e)(1) and (f); supplemental jurisdiction, pursuant to 28
8  U.S.C. § 1367(a), over the related state law claims; and, given
9  withdrawal of the reference of the SGP, Inc., bankruptcy to this
10 Court, pursuant to 28 U.S.C. § 157.

11     2.   The Court is empowered to grant the relief requested
12 herein insofar as it is related to the bankruptcy of the SGP
13 Benefit Plan, Inc., pursuant to Bankruptcy Code § 105(a) and Rule
14 9019 of the Federal Rules of Bankruptcy Procedure and, insofar as
15 it is related to the SGP Benefit Plan and Trust, pursuant to
16 ERISA and the All Writs Act 28 U.S.C. § 651. (*U.S. v. IBT* (2nd
17 Cir. 1990) 907 Fed.2d 277, 281; *In Re Baldwin-United Corp.*(2nd
18 Cir. 1985) 770 Fed.2d 283, 338; *Hanlon v. Chrysler Corp.* (9th
19 Cir. 1998) 150 F.3d 1011) and ERISA (*Firestone Tire and Rubber
20 Co. v. Bruch* (1989) 489 U.S. 101, 110 [109 S.Ct. 948, 954]; and,
21 *Cutler v. 65 SEC. Plan* (E.D.N.Y. 1993) 831 F.Supp. 1008.)

22     3.   Considering the substantial delay, risks and costs of
23 litigation generally and particularly in matters of such
24 magnitude and complexity as are presented in this litigation and
25 considering the risks of non-recovery even if a judgment were
26 obtained given the self-exhausting nature of defendants'
27 insurance policies and lack of identifiable assets sufficient to
28 satisfy judgments, the settlements with Sunkist, the Glacier

13

1  defendants and the former trustees (as identified hereinabove),
2  and each of them, are found to be fair, reasonable, and adequate,
3  reasonably proportional to the settling parties' relative
4  exposures and in the best interests of SGP Benefit Plan, Inc.,
5  the SGP Benefit Plan and the SGP Benefit Plan Trust and the
6  beneficiaries, creditors and claimants thereof.  Each of the said
7  settlements are approved on the terms set out herein and in the
8  settlement agreements between Stratton and the settling parties
9  (attached as Exhibits to Stratton's Motion for Final Court
10 Approval).

11      4.    The costs and expenses incurred on behalfof the Plan as
12 set out in Stratton's Proposed Distribution and summarized in
13 Finding of Fact number 11 are approved as fair and reasonable and
14 in the best interests of SGP Benefit Plan, Inc., and the SGP
15 Benefit Plan and Trust and the claimants and creditors thereof.
16 Stratton is authorized and directed to pay those costs and
17 expenses as provided herein at the time provided in paragraph 9
18 below.

19      5.    After payment of approved administrative expenses, the
20 proposed payout to claimants, beneficiaries, and creditors of SGP
21 Benefit Plan, Inc., and the SGP Benefit Plan and SGP Benefit Plan
22 Trust provides for a greater distribution to such creditors and
23 claimants than any other reasonably available alternative relief
24 and is in the best interests of the claimants, creditors, and
25 beneficiaries of SGP Benefit Plan, Inc., and the SGP Benefit Plan
26 and the SGP Benefit Plan Trust. Stratton is authorized and
27 directed to distribute the net settlement funds after payment of
28 approved administrative expenses in the manner approved herein

1  and at the time provided in paragraph 9 below.

2       6.   To effectuate the settlements and distributions

3  provided for herein, all Claimants,[2] creditors, participants, and

4  beneficiaries of SGP Benefit Plan, Inc., the SGP Benefit Plan and

5  the SGP Benefit Plan Trust, recipients of settlement funds and

6  others, including those who filed claims in the bankruptcy court

7  and/or who were sent Stratton's notice of need to file a Proof of

8  Claim and/or Notice of the September 18, 2006, hearing on

9  Stratton's Motion for Final Approval of Settlements and/or

10 Stratton's Notice of continued November 22, 2006, hearing and

11 specifically including all those shown on Strattons' proofs of

12 service of Notice of said hearings dated July 14, July 17, and

13 November 15, 2006, (as set forth in the attached Exhibit "A") on

14 file herein shall be and hereby are permanently barred and

15 enjoined from initiating or pursuing any claims or actions

16 against SGP Benefit Plan, Inc., the SGP Benefit Plan, and/or the

17 SGP Benefit Plan Trust, or any of the settling parties (Sunkist,

18 the Former Trustee Defendants, and the Glacier Defendants[3] as

19 identified hereinabove) relating in any way to SGP Benefit Plan,

20 _____

21      [2] "Claimants" are defined as all participants,
   beneficiaries, medical providers, employer groups, service
22 providers, health providers and creditors of SGP Benefit Plan,
   Inc., SGP Benefit Plan, and/or the SGP Benefit Plan Trust and
23 their respective transferees, successors and assigns, and any and
   all persons, groups of persons, partnerships, entities, medical
24 service providers, healthcare providers, employers, employer
   organizations or other organizations who submitted claims or
25 proofs of claim in the SGP Benefit Plan, Inc., bankruptcy
26 proceeding and/or in this action.

27      [3] To include those identified in Footnote 1 of the Findings
28 of Fact.

15

1  Inc., the SGP Benefit Plan or the SGP Benefit Plan Trust,

2  including, but not limited to, claims or actions relating to:

3  the creation, operation, management, administration, marketing or

4  failure of SGP Benefit Plan, Inc., the SGP Benefit Plan, and the

5  SGP Benefit Plan Trust; the payment or non-payment of benefits or

6  claims for services; or any promise, representation, contract or

7  other activity relating to SGP Benefit Plan, Inc., the SGP

8  Benefit Plan, and the SGP Benefit Plan Trust.

9      7.   Further, to effectuate the settlements and

10 distributions provided for herein, each and every person and

11 entity who accepts a check pursuant to the distribution plan

12 approved herein is, by endorsing, cashing, or otherwise

13 negotiating that check, deemed to have agreed to and will be

14 bound by the terms of the following:

15     Each claimant releases and forever discharges SGP, the
       plan, the trust and the settling parties, and each of
16     them, from any and all claims relating in any manner to
       SGP, the plan, or the trust and from the settling
17     parties' acts, errors, conduct, administration, work,
       services or activities of any type relating in any
18     manner to any of the foregoing, from the beginning of
       time until the final order of judgment and dismissal
19     with prejudice is entered in this case.

20     As part of the release, each such claimant further
       understands and agrees that his/her/its claims may be
21     different and/or greater than currently perceived.
       Nevertheless, each such claimant understands and agrees
22     that this is a full and final settlement and release of
       all such claims that claimant may possibly have now or
23     in the future against any of the settling parties. Each
       such claimant hereby knowingly and voluntarily waives
24     all rights and/or benefits provided to him/her/it under
       section 1542 of the California Civil Code, and the
25     comparable statutes of all other states.  Said Civil
       Code section 1542 provides as follows:
26
27         A general release does not extend to claims
           which the creditor does not know or suspect
28         to exist in his favor at the time ofexecuting
           the release, which, if known by him must have

16

1

2

        materially affected his settlement with the debtors ;"

3

    8.   If the time for filing an appeal of this order expires or an appeal is filed but results in final affirmation of this Court's order and judgment, Stratton shall at that time petition this Court for release of the settlement funds and all interest accumulated thereon from the Court's Registry for her use in payment of expenses and claims as provided above.  If an appeal is filed and an appellate court overrules this Court's entry of final judgment or remands the action to this Court for reconsideration in a way which effects a material change to the terms of any settlement, the Court shall release the settlement funds from the Registry of the Court and return them to the settling parties and the Settlement Agreements will be deemed void *ab initio* and of no effect.

4

5

6

7

8

9

10

11

12

13

14

15

16

    9.   Once this Court's orders have become final and all prerequisites and conditions of settlement have been satisfied and Stratton has paid SGP Benefit Plan, Inc., SGP Benefit Plan and the SGP Benefit Plan Trust costs and expenses and distributed settlement funds to the claimants and creditors of SGP Benefit Plan, Inc., the SGP Benefit Plan and the SGP Benefit Plan Trust as provided herein and deposited all remaining undistributed funds into the California Unclaimed Property Fund as set out above, Stratton shall report to the Court and all parties to this action that she has completed the distribution and seek this Court's order closing the SGP Benefit Plan, Inc., Bankruptcy Proceeding and terminating the Plan and the Trust and discharging SGP and Stratton.

17

18

19

20

21

22

23

24

25

26

27

28

1    10.   The terms of the parties' settlement agreements

2  attached to Stratton's motion for final court approval are

3  incorporated herein.   This Court shall retain jurisdiction over

4  he plaintiff and the settling parties to ensure compliance with

5  the terms of the settlement and the orders of this Court and to

6  enforce all of the relief, including the permanent bar and

7  injunctive relief, requested and granted in this case.   (*Kokkonen*

8  *v. Guardian Life Ins. Co. Of America* (1994) 511 U.S. 375, 381;

9  114 S.Ct. 1673, 1677; 128 L.Ed.2d 391.; *Hagestad v. Tragesser*

10 (9th Cir. 1995) 49 F.3d 1430, 1432.)

11

12 DATED:   November 22, 2006.

13                                   /s/ Oliver W. Wanger

14                              _____
                                     Oliver W. Wanger
15                               United States District Court

16

17

18

19

20

21

22

23

24

25

26

27

28

18