UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETH MAXWELL STRATTON, CHAPTER 7 BANKRUPTCY TRUSTEE FOR THE SGP BENEFIT PLAN, INC.,<br><br>               Plaintiff,<br><br>  v.<br><br>GLACIER INSURANCE ADMINISTRATORS, INC.; GLACIER INSURANCE ENTERPRISE, INC.; FRESNO AGENT SERVICE TEAM, INC DOING BUSINESS AS BEN MAR SERVICES; LAWRENCE THOMPSON; BRAD STARK; PIERRE TADA; NORMA SPALDING; DICK NEECE, SR; WILLIAM WOLHAUPTER; AND DOES 1 THROUGH 250, INCLUSIVE,<br><br>               Defendants. | 1:02-CV-06213 OWW DLB<br><br>**MEMORANDUM DECISION AND ORDER GRANTING SECOND APPLICATION FOR APPROVAL OF PROFESSIONAL FEES OF CHAPTER 7 TRUSTEE/INDEPENDENT FIDUCIARY** |

## 1. INTRODUCTION

Stratton brings this motion as a Chapter 7 Bankruptcy Trustee of the SGP Benefit Plan, Inc., and as the court-appointed independent fiduciary for the SGP Benefit Plan ("The Plan"), and the SGP Benefit Trust("The Trust" or, collectively, "SGP/P/T.") The Findings of Fact and Conclusions of Law entered in this case on November 11, 2006 and the Judgement entered on November 27,

1

2006 were entered subject to Stratton's further fee applications for services rendered after April 19, 2006. This is Stratton's second motion for approval of professional fees. This motion is unopposed.

## 2. BACKGROUND

The lengthy history of this litigation is set forth in great detail in numerous memoranda decisions issued by the district court, including a prior decision on the Findings of Fact and Conclusions of Law (Doc. 175, Filed November 22, 2006), and an order approving Stratton's first application for attorneys' fees (Doc. 185, Order Re: Class Settlement, Permanent Injunction, and attorneys fees, Filed January 29, 2007.) For the purposes of this motion, a brief background summary is sufficient.

SGP was created in August 1990 as a California non-profit mutual benefit corporation for the purpose of administering a voluntary employees benefit association. The Plan, also referred to at time as the Trust, is an employee welfare benefit plan under ERISA § 1002(1)(A). It was designed to be a multiple employer welfare arrangement in accordance with ERISA for the purpose of providing medical, surgical, and/or hospital care benefits to members and affiliates of Sunkist Growers, Inc. ("Sunkist"). SGP was the designated plan sponsor.

Glacier Insurance Enterprises, Inc. ("Glacier") and its president and chief executive officer, Larry Thompson, acted as administrators and consultants of the Plan throughout its existence. Glacier was responsible for reporting to the officers of SGP/P/T.

Sunkist was an original promoter of the Plan and is alleged

to have been a fiduciary and party in interest with respect to the Plan within the meaning of ERISA. 29 U.S.C. §1002(21); 29 U.S.C. §1002(14). Sunkist members and officers including some of the former Trustee Defendants and Ted Jones, were also officers of SGP and/or trustees of the Plan and Trust. Sunkist endorsed and actively participated in promotion of the Plan and provided certain assurances regarding Plan financing.

The Plan did well and operated without a loss throughout its first years of existence. However, the Plan began to show significant losses by 1999. For its fiscal year ending on September 30, 1999, it had a $240,000 loss after accounting for funds in reserve. By fiscal year end on September 30, 2000, the annual losses had increased to $3.5 million.

The California Department of Insurance investigated the Plan and directed that it stop accepting new insureds in July 2001. The Plan ceased operation in October of 2001. The United States Department of Labor ("DOL") conducted an exhaustive investigation into the history and demise of SGP/P/T and determined that there was possibly as much as $10 million in medical claims against the Plan outstanding and unpaid as of the end of 2001. No claims have been paid since the Plan ceased operation in October 2001. The plan is without assets and there are no funds to pay claims except as may be produced through this litigation. Medical providers began to seek payment of their claims directly from their patients and/or their employers.

On February 25, 2002, SGP, Inc. filed for protection under Chapter 7 of the United States Bankruptcy Code. Stratton became the duly qualified, appointed and acting Chapter 7 Bankruptcy

**3**

Trustee of SGP. The bankruptcy case was removed to the district court. On May 28, 2003 the court appointed Stratton as an independent fiduciary of the Plan and Trust in place of Former Trustee Defendants.

On October 1, 2002 Stratton initiated litigation to recover SGP/P/T's losses from Sunkist, Glacier, and the Former Trustee Defendants alleging each of the defendants had breached fiduciary duties owed to SGP/P/T. Stratton alleged causes of action for breach of fiduciary duties imposed by ERISA, misrepresentation, breach of contract, negligence, and engaging in prohibited transactions.

All parties eventually reached a settlement agreement that was approved by the district court on January 29, 2007. (Doc. 185, Order Re: Class Settlement Agreement, Granting Permanent Injunction against future claims, Attorneys Fees.) The Settlement Agreement resolves a dispute between the Plaintiff and Defendants Glacier Insurance Administrators, Inc. ("Glacier"), Former Officers and Trustees of SGP/P/T ("Former Trustee Defendants.") The court also ordered the release of settlement funds from the court registry. (Doc. 184, Order Releasing Settlement Funds from Court Registry, Filed January 19, 2007.)

In this motion, Stratton reports to the court that after the appeal period for the findings of fact expired, the first disbursement of funds to claimants were made. (Doc. 189, Second Application for Approval of Professional Fees, ¶ 11, Filed May 30, 2007.) Stratton states that approximately 630 checks were issued and several were returned for bad addresses. (*Id.*) New addresses for most such claimants have since been found and the

**4**

checks re-mailed. (*Id.*) However there are still several outstanding checks. (*Id.*) Stratton does not know whether said checks are lost or simply have not yet been cashed. (*Id.*) Stratton claims that in her experience, claimants often hold onto checks for several months before depositing them. (*Id.*) In the next month, Stratton will be researching the outstanding checks to see whether a stop payment and reissue is appropriate. (*Id.*) She will not determine for another several months whether or not there will be sufficient excess funds for a second distribution to claimants. (*Id.*)

### 3. **STANDARD OF REVIEW**

Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the court's scrutiny for fairness, reasonableness, and adequacy. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). "Thus, to avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* If fees are unreasonably high, there is a "likelihood [] that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Id.* at 964. However, the court's task in reviewing negotiated fees is different from the court's task in fashioning fee awards from scratch. *Robbins,* 127 Cal. App. 4th at 444. The court is simply to determine whether the negotiated fee is

**5**

facially fair and reasonable. *Id.* This task requires the court to review the settlement agreement as a whole, including the fee award, to ensure that it was fairly and honestly negotiated, is not collusive, and adequately protects the interests of the parties. *Id.* Plaintiffs' attorneys have a duty to limit fees to an amount that represents the value of the work done. *Id.* Therefore, although a negotiated fee may represent a reasoned business decision to settle, a negotiated fee that exceeds a reasonable fee for the attorneys' contribution may not be approved. *Id.*

In calculating attorneys' fees in civil class action suits, the district court has discretion to use either the percentage method or the lodestar/multiplier method. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).[1] In determining Attorneys' Fees, counsel has used the lodestar method in this case. "In determining what a reasonable attorney's fee entails, the district court must apply the hybrid approach adopted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 [] (1983)." *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1992). "The most useful starting point for determining the amount of a reasonable fee is [1] the number of hours reasonably expended on the litigation [2] multiplied by a reasonable hourly rate." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)(relying upon *Hensley*, 461 U.S. at 433). The resulting

---

[1] When a settlement agreement creates a large fund for distribution to a class, as is the case here, courts may use either of these two options in determining what is fair and reasonable.

**6**

figure is known as the "Lodestar."

To determine what qualifies as reasonable attorney's fees, the Ninth Circuit has adopted the twelve Lodestar Factors as "guidelines [and] as appropriate factors to be considered in the balancing process required in a determination of reasonable attorney's fees:"

(1) the time and labor required,
(2) the novelty and difficulty of the questions involved,
(3) the skill requisite to perform the legal service properly,
(4) the preclusion of other employment by the attorney due to acceptance of the case,
(5) the customary fee,
(6) whether the fee is fixed or contingent,
(7) time limitations imposed by the client or the circumstances,
(8) the amount involved and the results obtained,
(9) the experience, reputation, and ability of the attorneys,
(10) the "undesirability" of the case,
(11) the nature and length of the professional relationship with the client, and
(12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 71 (9th Cir. 1975) (suits brought pursuant to 29 U.S.C. §§ 412 and 529) (citing *Johnson*, 488 F.2d 714); *see also $12,248 U.S. Currency*, 957 F.2d at 1520 (applying the twelve factors outlined in *Kerr* to the EAJA). "[Although] the lodestar determination has emerged as

**7**

1  the predominate element of the analysis....the court [can still]
2  make adjustments to the lodestar figure based on the 'riskiness'
3  of the lawsuit and the quality of the attorney's work." *Jordan*
4  *v. Multnomah Co.*, 815 F.2d 1258, 1262 n.5 (9th Cir. 1986).  In
5  addition, the court may reduce the fee award "if the relief,
6  however significant, is limited in comparison to the scope of the
7  litigation as a whole."  *Hensley*, 461 U.S. at 440.

### 4. DISCUSSION

In her request for approval of settlement and fees, Stratton was authorized to submit further fee applications for services rendered after April 19, 2006.  She first estimated that future fees for services (post April 19, 2006) would approximate $26,250.00.  In this application she is requesting $21,701.25, an amount less than the estimated amount.  (Doc. 189, Second Application for Approval of Professional Fees, ¶ 11, Filed May 30, 2007.)  Stratton claims that she has utilized staff from her office to perform necessary services, where that staff member could perform the task at a lesser hourly rate than that of Stratton.  (*Id.*)  Stratton claims that most time spent by staff was spent locating new addresses for returned mail.  (*Id.*)  This task was required to be done in a very short period of time and it was necessary to utilize the entire staff (including Mr. Seng) in order to timely accomplish the task.

Stratton requests the following additional fees:

| Person's Name | Hourly Rate x Total Hours = Total Fees |
|---|---|
| Beth Maxwell Stratton, Chapter 7 Trustee | $175.00 x. 95.10 hours = $16,642.50 |

**8**

| | |
|---|---|
| Michael J. Seng, Attorney (at law clerk rate) | $100.00 x 4.8 hours = $480.00 |
| Desiree Torrenz, law clerk | $100.00 x 14.00 hours = 1,400.00 |
| Kerry Cubberly, paralegal | $75.00 x 6.8 hours = $510.00 |
| Nithi Jhaveri, legal assistant | $75.00 x. 17.25 hours = $1,293.75 |
| Joy Kirk, legal assistant | $50.00 x 17.00 hours = $850.00 |
| Angela Guthrey, legal assistant | $50.00 x 10.5 hours = $525.00 |
| **TOTAL** | **$21,701.25** |

Stratton also requests the following fees for the Law Offices of Seng and Stratton:

| Person's Name | Hourly Rate x Total Hours = Total Fees |
|---|---|
| Michael J. Seng, Partner | $75.00 x. 115.40 hours = $8,655.00 |
| Beth Maxwell Stratton, Partner | $75.00 x $112.70 hours = $8,452.50 |
| Legal Assistant/ Paralegal | $25.00 x. 6.20 hours = $155.00 |
| **TOTAL** | **$17,262.50** |

All hours calculated are reasonable. Class counsel has submitted evidence of invoices dating back to April 3, 2006. The invoices detail services rendered in this case after April 19, 2006. The hourly rates used to calculate the lodestar are also reasonable. There were no objections to the approval of

9

additional fees by any party.

## 5. CONCLUSION

The second request for Attorneys Fees is **GRANTED**.

IT IS SO ORDERED.

**Dated:   July 3, 2007**                     **/s/ Oliver W. Wanger**
                                          UNITED STATES DISTRICT JUDGE